# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**BRAD L. BATES,**

    **Petitioner,**

    **v.**                                  **Case No. 11-CV-997**

**MICHAEL BAENEN,**

    **Respondent.**

---

## DECISION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS AND DISMISSING CASE

---

Brad L. Bates ("Bates"), a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Bates was convicted of first degree reckless injury while armed with a dangerous weapon, aggravated battery – intended bodily harm, criminal trespass to dwelling, and disorderly conduct – violent. (Habeas Petition, Docket # 1 at 2.) He was sentenced to twenty-nine years of imprisonment to be followed by thirteen years extended supervision.

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

On November 15, 2011, the Court conducted the required Rule 4 review and determined that Bates' petition must be dismissed as it did not appear that he had exhausted his ineffective assistance of counsel claim. On December 5, 2011, Bates filed a motion to alter or amend the Court's judgment denying his § 2254 petition and dismissing the case without prejudice. Bates provided the Court with documentation showing that he presented his ineffective assistance of counsel claim to the state

courts via a post-conviction motion in the circuit court. The denial of this post-conviction motion was affirmed on appeal in the Wisconsin Court of Appeals, and the Wisconsin Supreme Court denied Bates' petition for review. Consequently, the Court vacated its November 15, 2011 decision and ordered the respondent to file an answer, motion, or other response to Bates' petition. (Docket # 12.) The respondent answered the petition. The parties subsequently briefed the petition for a writ of habeas corpus and the petition is ready for disposition. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

Bates was initially charged with attempted first-degree intentional homicide while using a dangerous weapon, aggravated battery while using a dangerous weapon, criminal trespass to dwelling, and disorderly conduct. (Respondent's Br., Docket # 26 at 2.) Pursuant to plea negotiations, the first-degree intentional homicide was reduced to first-degree reckless injury while using a dangerous weapon. On April 2, 2007, Bates pled guilty to the amended charge and the three other original charges. (*Id.* at 2-3.)

Prior to the plea hearing, Bates' attorney wrote a letter to the trial judge expressing concerns regarding Bates' competency to accept a plea agreement. (Petitioner's Br., Attachment 2, Docket # 24-1.) At the plea hearing, the judge addressed the competency concerns raised by Bates' attorney. After engaging in a lengthy colloquy with Bates, the trial court found that it was "satisfied that this gentleman is act [sic] freely, voluntarily, and intelligently, and understands the nature and consequences of his actions." (Habeas Answer, Ex. D, Docket # 21-5 at 30.)

Subsequently, Bates hired new counsel who moved to withdraw the plea before sentencing. A hearing was held on this motion in which Bates testified that his former attorney failed to adequately explain the difference between concurrent and consecutive sentences, thus causing Bates

- 2 -

to fail to comprehend the term of the plea agreement whereby the state would recommend maximum consecutive sentences totaling 29 years in prison followed by 13 years of extended supervision. (Respondent's. Br., Docket # 26 at 5.)

The trial court found Bates' testimony not credible and denied the motion. (Habeas Answer, Ex. E, Docket # 21-6 at 34, 36.) Bates was sentenced to 29 years of initial confinement followed by 13 years of extended supervision. Bates hired a new attorney who filed a postconviction motion seeking to withdraw the plea. An evidentiary hearing was held on October 21, 2008 in which both Bates and his original attorney testified. Bates testified that he felt coerced by his attorney and the trial judge to accept the plea. (Habeas Answer, Ex. G, Docket # 21-8 at 26-27.) The trial court denied the motion.

Before the Wisconsin Court of Appeals, Bates' attorney filed a no-merit appeal on Bates' behalf. The Wisconsin Court of Appeals affirmed the conviction on March 3, 2010. (Habeas Answer, Ex. B, Docket # 21-3.) The Wisconsin Supreme Court denied Bates' petition for review on July 21, 2010. (Docket # 10 at 22.) On October 24, 2011, Bates filed the instant petition for writ of habeas corpus.

## STANDARD OF REVIEW

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214, which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

- 3 -

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This provision entitles federal courts acting within their jurisdiction to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. *Lindh v. Murphy*, 96 F.3d 856, 870-77 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" *Hereford v. McCaughtry*, 101 F. Supp. 2d 742, 746 (E.D. Wis. 2000) (quoting *Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999)).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 120 S.Ct. 1495, 1519 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 120 S.Ct. at 1523).

- 4 -

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting *Williams*, 120 S.Ct. at 1522), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

However, when no state court has squarely addressed the merits of a habeas claim, the claim is reviewed under the pre-AEDPA standard of 28 U.S.C. § 2243, under which we "dispose of the matter as law and justice require." *Morales v. Johnson*, 659 F.3d 588, 599 (7th Cir. 2011) (internal quotations and citations omitted). This is "a more generous standard" however, the petitioner's constitutional claim is reviewed "with deference to the state court, but ultimately de novo." *Id.* (internal citations omitted).

## ANALYSIS

In his petition, Bates challenges his conviction on five grounds:

(1)     Ineffective assistance of trial counsel;

(2)     Due process as petitioner was not competent at the time he entered plea. Also ineffective assistance in this regard too;

- 5 -

(3)     Due process. Petition [sic] was not aware of the maximum penalty faced as a result of pleading guilty;

(4)     Due process. Petitioner was presented with the plea questionnaire form approximately two minutes befor [sic] proceedings began; and

(5)     Double jeopardy.

(Docket # 1 at 6-10.) The Court will address each in turn.

### 1.     Ineffective Assistance of Counsel

In ground one of his petition, Bates contends that his trial attorney was ineffective for failing to counsel him on his right pursuant to Wis. Stat. § 973.20 to a hearing on the victim's claim to restitution. (Docket # 1 at 6.) Bates further contends in ground two of his petition that his trial counsel was ineffective for counseling Bates to plead guilty after previously informing the sentencing court that he doubted Bates' competence. (*Id.* at 7.)

The clearly established Supreme Court precedent for ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, Bates must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. To satisfy *Strickland*'s performance prong, the defendant must identify "acts or omissions of counsel that could not be the result of professional judgment." *U.S. ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir.1988) (citing *Strickland*, 466 U.S. at 690). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 689). A reviewing court must seek to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct falls

- 6 -

within a wide range of reasonable professional assistance," *id.*, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690.

To establish prejudice, a defendant must show that "counsel's constitutionally defective performance affected the outcome of the plea process. In other words, . . . the defendant must show that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice. *United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990).

Although Bates raised the issue of ineffective assistance of counsel in his postconviction motion before the trial court, (Docket # 10), it does not clearly appear that either the trial court in its oral ruling on Bates' motion or the Wisconsin Court of Appeals in its decision affirming the denial of Bates' postconviction motion, fully considered Bates' ineffective assistance of counsel claim on the merits. Thus, I will apply the pre-AEDPA standard of review. *See George v. Smith*, 586 F.3d 479, 485 (7th Cir. 2009) ("[W]e hesitate to apply a stricter standard of review without a clearer indication that Wisconsin fully considered [the petitioner's] claim on the merits.").

In Bates' brief in support of his habeas corpus petition, he presents no arguments for ground one of his petition that "trial counsel fail [sic] to counsel Petitioner on his right pursuant to Wis. Stat. 973.20, that he had a right to a hearing on the alleged victim's claim to restitution." As such, it appears Bates has abandoned this claim. *See, e.g.*, *Duncan v. State of Wis. Dept. Health and Family Serv.*, 166 F.3d 930, 934 (7th Cir. 1999) (stating that arguments that a party fails to develop in its brief in any meaningful manner will be deemed waived or abandoned); *Coalition for the Abolition of Marijuana*

- 7 -

*Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (stating that the failure to brief and argue an issue before the district court is grounds for finding that the issue has been abandoned). Accordingly, ground one, having been abandoned, fails.

In ground two, Bates also argues that his trial counsel was ineffective for "abandon[ing] the claim" of competency and counseling petitioner to plead guilty after bringing to the trial court's attention his doubts about Bates' competency. This claim also fails. Bates does not show how his attorney's performance was deficient. To the contrary, the record shows Bates' counsel raised his concerns before the trial court in what Bates admits was a "very detailed letter." (Docket # 24 at 4.) Further, the record shows that Bates' counsel did not simply ignore the argument before the trial court. Rather, he stated that his concerns were resolved through his "many, many conversations" with Bates and that, "ultimately Mr. Bates convinc[ed] me that he understands the offer, and in fact, on late Friday afternoon asked me to do something to somewhat tweak the offer, and which indicated to me a further understanding of it." (Docket # 21-5 at 5.) Bates' attorney based his belief that Bates was competent to understand the plea agreement on his many interactions with Bates. Bates has not shown that his attorney's performance in counseling Bates to accept a very favorable plea agreement satisfies *Strickland*'s performance prong. The trial court itself noted that the plea agreement reduced Bates' potential maximum exposure to imprisonment on the first count by more than one half. (*Id.* at 7-8.)

Further, even assuming, *arguendo*, Bates' counsel's performance was constitutionally defective, Bates has not shown that he was prejudiced in that he would not have pleaded guilty and would have insisted on going to trial but for his counsel's errors. The trial judge engaged in the following plea colloquy with Bates:

| The Court: | You don't have to plead guilty to anything, if you don't want to; and if you don't want to plead guilty, you're entitled to a trial . .. Do you understand that? |
|---|---|
| Bates: | Yes, sir. |

***

| The Court: | . . . if you plead guilty, you're giving up your right to present any evidence on the question of whether you're guilty or not because if you plead guilty I will find you guilty without a trial. Do you understand that? |
|---|---|
| Bates: | Yes, sir. |
| The Court: | And I will - - you know, you're giving up your right to a jury trial of 12 people. You would be giving up your right to present evidence. You would be giving up your right to silence, because you're testifying against yourself by pleading guilty, and you were relieving the district attorney of the burden that he would ordinarily have of proving beyond a reasonable doubt that you were guilty. Do you understand that? |
| Bates: | Yes, sir. |

(Docket # 21-5 at 18, 20-21.)

The trial court fully explained to Bates that he had a right to a jury trial and that he was giving up his right to a jury trial by pleading guilty. Bates has not shown that but for his counsel's performance he would not have pled guilty. Accordingly, ground one of Bates' habeas petition, as well as ground two, to the extent it alleges ineffective assistance of counsel, are denied.

   2.    *Due Process*

In grounds two through four of his petition, Bates alleges violations of his due process rights. Although divided into three grounds, all three of Bates' claims challenge his competency to enter a guilty plea. In ground two, Bates asserts that he was incompetent to enter a guilty plea and that the

trial court should have held a hearing to determine whether he was competent.[1] (Docket # 1 at 7; Docket # 24 at 6.) In ground three, Bates argues he was not aware of the maximum penalty he faced as a result of pleading guilty. (Docket # 1 at 8.) And in ground four, Bates argues that he was presented with a plea questionnaire form approximately two minutes before the plea hearing and that he did not understand that the sentences he was receiving for the four counts was consecutive rather than concurrent. (Docket # 1 at 8-9.)

The Due Process Clause of the Fourteenth Amendment prohibits the states from trying and convicting mentally incompetent defendants. Whether a defendant is competent depends on whether he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). The Supreme Court has held that the *Dusky* standard for competence applies to the decision to plead guilty as well as to a defendant's ability to stand trial. *Godinez v. Moran*, 509 U.S. 389, 398-99 (1993).

### 2.1    Competency Hearing

In ground two of his petition, Bates argues that he was incompetent to enter a guilty plea and that the trial court should have held a hearing to determine whether he was competent. (Docket # 1 at 7; Docket # 24 at 6.) The Wisconsin trial court was constitutionally required to conduct a hearing to determine Bates' competence to plead guilty only if it entertained a bona fide doubt as to

---

[1]    In his reply brief, Bates argues that he was incompetent to participate in the plea colloquy. (Docket # 28 at 4.) This issue seems to be a rephrasing of the original issue raised by Bates that he was incompetent to enter a guilty plea. However, to the extent this is a new issue raised for the first time in a reply brief, the Court will not consider it. *Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004) (finding that arguments presented for the first time in a reply brief are considered waived).

- 10 -

his competence. *See Pate v. Robinson*, 383 U.S. 375, 385 (1966); *Drope v. Missouri*, 420 U.S. 162, 173 (1975); *United States ex rel. Cyburt v. Rowe*, 638 F.2d 1100, 1103 (7th Cir. 1981); Wis. Stat. § 971.14(1r). A "bona fide doubt" means that at the time of the hearing, the judge had a substantial reason to doubt the defendant's fitness. *See Phillips v. Lane*, 787 F.2d 208, 216 (7th Cir. 1986). According to the record, several days before Bates' guilty plea hearing, Bates' counsel sent a letter to the trial court judge articulating his concerns regarding Bates' competency to accept a plea agreement. (Docket # 24-1 at 3.) In the letter, Bates' counsel stated that Bates has reading and vocabulary deficiencies and his volunteer tutor at the jail stated that Bates read at a third grade level. (*Id.*) Bates' counsel further stated that "[a]s the result of [Bates'] educational and apparent learning ability deficits, [Bates] has always had a difficult time understanding basic legal concepts." (*Id.*) Bates' counsel also expressed concern that Bates was suffering from memory loss due to dissociative amnesia. (*Id.* at 4.)

At the time of Bates' guilty plea hearing, the trial judge questioned Bates' counsel about the letter and stated that the letter came as "kind of a surprise to me because nothing that I have seen in this case has given me any cause to be concerned." (Docket # 21-5 at 5.) While Bates' counsel expressed that he still had some concerns regarding Bates' competency, he found that after "many, many conversations" with Bates, as well as Bates' desire to "tweak" the offer, Bates' counsel was ultimately convinced that Bates understood the offer and was competent to enter a plea to the charges. (*Id.* at 5-6.) The trial court stated the following:

> Mr. Bates, a person cannot be processed through the criminal court if he's not competent to understand the proceedings, and a person is not competent if he lacks either the mental capacity or - - you know, because of a mental ailment - - disease or defect - - is unable to assist his lawyer in his own defense or to understand the charges against him, what's involved in the proceedings here, and I want to make sure that you understand fully what all is involved here; that you

- 11 -

> have a sufficient grasp of the circumstances, both to advise your lawyer as to what you want to do and understand exactly what the various choices that present themselves during the course of the criminal case, and to assist him in presenting any defense for you.

(*Id.* at 6-7.)

The trial court inquired whether Bates had ever been treated for a mental or emotional disorder or whether he had ever suffered from hallucinations or delusions of any kind, to which Bates responded that he had not. (*Id.* at 10.) Rather, Bates stated that he had experienced anxiety attacks and had a learning disability, specifically that he had attended ED classes all of his life. (*Id.* at 10.) The trial court engaged in a lengthy colloquy with Bates in which he explained to him what pleading guilty meant and the potential risks and benefits involved in accepting the plea. (*Id.* at 10-26.) Although on several occasions this involved the judge explaining things to Bates more than once, Bates stated that he understood the judge's explanations and questions. The trial court found that Bates was "fully competent to proceed in this matter based upon the discussions today and as reported by [Bates' counsel] and the exposure I have had with this man in the time that this case had been pending before me . . . ." (*Id.* at 30.)

The Wisconsin Court of Appeals upheld the trial court's finding of Bates' competence, stating that although Bates informed the court that he has a learning disability, the record "fully bears out that the court and Bates' trial defense counsel took extra time throughout the proceedings to explain matters to Bates. The court's ultimate conclusion that Bates understood the decisions he made is not clearly erroneous." (Docket # 21-3 at 2-3.)

The decisions of the Wisconsin courts are entirely consistent with the federal law as articulated in *Pate v. Robinson* and *Drope v. Missouri*, which require the state court to conduct a hearing to determine competence only if the evidence raises a bona fide doubt as to the defendant's

- 12 -

competence. While Bates' counsel expressed concerns over Bates' supposed learning disability and amnesia, the only evidence presented to the trial court was a letter from Bates' counsel in which a volunteer tutor at the jail stated that Bates reads at a third grade level and Bates' attorney's opinion that Bates' memory issues could be caused by dissociative amnesia.[2] At the hearing, Bates' counsel assured the trial court that Bates was competent to enter a guilty plea. *See Cyburt*, 638 F.2d at 1104 (finding when the assurances of counsel corroborate other evidence in the record, the trial court's failure to hold a competency hearing was not constitutional error). Further, the trial court engaged in a lengthy colloquy with Bates in which Bates repeatedly assured the trial court he understood the court's explanations and questions. (Docket # 21-5.) As such, the evidence presented to the trial court did not give it a substantial reason to doubt Bates' fitness to enter a guilty plea and thus the trial court's failure to hold a competency hearing did not deprive Bates of his due process rights. Thus, ground two of Bates' habeas petition is denied.

### 2.2 Maximum Penalty Faced

In grounds three and four of his petition, Bates argues that he was not aware of the maximum penalty he faced as a result of pleading guilty, specifically that he would be facing consecutive rather than concurrent sentences. (Docket # 1 at 8-9, Docket # 24 at 8-11.) Although Bates admits that he

---

[2]     Bates also appends to his brief in support of his petition a psycho-educational evaluation conducted on July 14, 2009 by the State of Wisconsin Department of Corrections. (Docket # 24-1.) This document clearly was not presented to the trial court as Bates' guilty plea hearing was conducted on April 2, 2007. In its March 3, 2010 decision, the Wisconsin Court of Appeals stated that it disregarded materials Bates appended to his response that were not part of the record. (Docket # 21-3 at 2 n.3.) Although the court of appeals does not make clear which materials Bates appended to his response, it is likely the court of appeals refers to the psycho-educational evaluation. Because this evidence was not before the state court, I will not consider it. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011) (finding that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits).

responded "Yes, sir" when asked if he understood that the district attorney was recommending and the court could sentence him to 29 ½ years, Bates argues that he did not understand "the portion of sentencing regarding consecutive vs. concurrent, which is not suprising [sic] given that Bates is intellectually challenged." (Docket # 24 at 8.) Bates further argues that he did not see the plea questionnaire until just before the hearing and the plea questionnaire failed to contain the state's sentencing recommendation for count one and misstated the state's recommendation for count four. (Docket # 24 at 9-10.) Once again, Bates has failed to show a violation of his due process rights.

In his motion to withdraw his guilty plea, Bates argued to the trial court that he did not understand the meaning of consecutive versus concurrent sentences. The trial court denied Bates' motion, stating that during the guilty plea hearing, the maximum potential sentence Bates faced was explained to him twice in terms of actual numbers as opposed to consecutive versus concurrent sentences. (Docket # 21-6 at 31-36.) The record reflects this understanding. At Bates' guilty plea hearing, the district attorney recited the terms of the plea agreement, stating that "[a]ll of the time is to run consecutive to each other, which my calculations, if they are correct, would mean 29 years of initial incarceration followed by 13 years of extended supervision." (Docket # 21-5 at 3-4.) Later in the hearing, the trial court repeated the terms, specifically stating that the "Court could order that you would be confined consecutive on those charges, so that you could ultimately serve as long as 39 years, and the Court could order your immediate confinement for as long as 29 years." (*Id.* at 16-17.) The court asked Bates "Do you understand those things?" to which Bates responded, "Yes, sir." (*Id.* at 17.)

Further, although Bates is correct that the plea questionnaire failed to specifically recite the state's sentencing recommendation on count one, the plea questionnaire does state that as a class D felony, the charge was punishable by up to 30 years incarceration (20 years in custody and 10 years

- 14 -

extended supervision). (Docket # 24-1 at 8.) Also, both the prosecutor and the trial court told Bates the recommendation on the record. (Docket # 21-5 at 3, 16.) Regarding the misstatement on the plea questionnaire of the state's sentencing recommendation on count four, the trial court caught the error and corrected it on the record. (*Id.* at 4.) The only explanation given when questioned by the trial court as to why he would tell the court he understood the maximum sentence he was facing when in fact he truly did not understand it was "[b]ecause I don't understand." (Docket # 21-6 at 32.)

A defendant's plea of guilty or no contest is constitutionally valid if entered knowingly, voluntarily and intelligently. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). In denying Bates' motion to withdraw his guilty plea, the trial court found that it was "ridiculous to focus on these consecutive versus concurrent because it was actually discussed in numbers. That's preposterous that [Bates] claims that the root of his misunderstanding is some misunderstanding of consecutive versus concurrent, when all we dealt with actually was numbers." (Docket # 21-6 at 35.) The court of appeals upheld the trial court's finding that Bates' pleas were knowing and voluntary. (Docket # 21-3 at 4.) Bates has not shown that the state court's findings were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. As previously stated, a defendant's competence to enter a guilty plea depends on whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. *Dusky*, 362 U.S. at 402; *Godinez*, 509 U.S. at 397-98. The trial court's findings that Bates was competent to enter a guilty plea and understood the maximum penalty he faced is not contrary to *Dusky v. United States* and *Godinez v. Moran*. As such, grounds three and four of Bates' habeas petition must be denied.

- 15 -

3.    *Double Jeopardy*

Finally, Bates argues that his right to be free from double jeopardy was violated because he was allowed to enter a guilty plea to aggravated battery while using a dangerous weapon, which he argues is a lesser included offense of first-degree reckless injury while using a dangerous weapon. (Docket # 1 at 10; Docket # 24 at 11.) Also, although not stated in his petition, Bates argues in his brief that his attorney was constitutionally deficient by failing to advise him that aggravated battery is a lesser included offense of first degree reckless injury. (Docket # 24 at 11.)

The Double Jeopardy Clause of the Fifth Amendment provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend. V. The Supreme Court utilizes the "same elements" test articulated in *Blockburger v. United States*, 284 U.S. 299 (1932), to determine whether two offenses are in fact the "same offense" for double jeopardy purposes. *United States v. Dixon*, 509 U.S. 688, 696 (1993). The "same elements" test inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution. *Id.*

The Wisconsin Court of Appeals rejected Bates' double jeopardy claim, finding that aggravated battery with intent to cause bodily harm is not a lesser-included offense of first-degree reckless injury because each crime requires proof of different elements, citing *State v. Eastman*, 185 Wis. 2d 405, 409, 518 N.W.2d 257 (Ct. App. 1994). In *Eastman*, the court of appeals found that because first-degree reckless injury requires a showing of utter disregard for human life, it is not the "same crime" as aggravated battery and, therefore, does not meet the definition of a lesser included offense under Wis. Stat. § 939.66. *Id.* at 412. The *Eastman* court further found that Wis. Stat. § 939.66 codifies the *Blockburger* "elements only" test. *Id.* at 413 n.2. As such, the court of appeals' holding is

- 16 -

consistent with federal law as articulated in *Blockburger* and *Dixon*. Because aggravated battery with intent to cause bodily harm is not a lesser-included offense of first-degree reckless injury, Bates' counsel was not ineffective for failing to advise Bates as such. Therefore, ground five of Bates' petition fails.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n. 4).

On Bates' ineffective assistance of counsel claim articulated in ground one, Bates did not brief the claim and thus abandoned the issue. Reasonable jurists would not disagree on the dismissal of this claim and the Court will deny a certificate of appealability as to this ground.

Regarding grounds two through five, reasonable jurists would not find the court's decision to deny Bates' petition debatable or wrong. First, as to Bates' competency issues raised in grounds two through four, it is not debatable that the court of appeals correctly applied federal law and based on the totality of the evidence, the court of appeals' finding that Bates was competent to enter a guilty plea was not unreasonable. Further, regarding the ineffective assistance of counsel issues raised in grounds two and five, reasonable jurists would not debate this Court's finding that Bates' counsel was

- 17 -

not ineffective as to these claims. As to the double jeopardy claim in ground five, the court of appeals correctly applied federal law in finding that aggravated battery with intent to cause bodily harm is not a lesser-included offense of first-degree reckless injury. Reasonable jurists would not debate that conclusion. Thus, the Court will deny a certificate of appealability as to grounds two through five.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 27th day of November, 2012.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge

.

- 18 -